UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MONTBLANC-SIMPLO GMBH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01013 (AJT/IDD) |
| | ) | |
| ACHATSTYLOMONTBLANC.COM, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff's Motion for Default Judgment against Defendants <achatstylomontblanc.com>, <cheapmontblancfuller.com>, <discountmontblanc.com>, <gooddealmontblanc.com>, <lovemontblancpens.com>, <montblancitems.com>, <montblancmerchant.com>, <montblancpenshoponline.com>, <montblancpensmart.com>, <takemontblancpen.com> ("Defendants" or "Defendant Domain Names") pursuant to Federal Rule of Civil Procedure ("FRCP") 55(b)(2). (Dkt. No. 13.) After a licensed attorney for Defendants failed to appear at the hearing on October 11, 2013, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, the Motion for Default Judgment, and the supporting exhibits, the undersigned Magistrate Judge makes the following findings and recommends that default judgment be entered against Defendants.

### I. INTRODUCTION

Montblanc-Simplo GmbH ("Plaintiff") filed the Complaint on August 16, 2013, seeking relief under the Anti-Cybersquatting Consumer Protection Act ("Act" or "ACPA"), 15 U.S.C.

§ 1125(d) ("ACPA"), based on lei li's ("Registrant's") bad-faith use of the domain names <achatstylomontblanc.com>, <cheapmontblancfuller.com>, <discountmontblanc.com>, <gooddealmontblanc.com>, <lovemontblancpens.com>, <montblancitems.com>, <montblancmerchant.com>, <montblancpenshoponline.com>, <montblancpensmart.com>, <takemontblancpen.com>. (Compl. ¶¶ 2-3.) The ACPA grants trademark owners a remedy against "cybersquatting." Cybersquatting occurs when a trademark owner claims that another party registers or uses the owner's trademark as a domain name with the bad faith intent of profiting from the sale or use of the domain name.[1] Plaintiff has moved for default judgment against Defendant Domain Names and requests that this Court order VeriSign, Inc. ("Verisign") to transfer the registration of <achatstylomontblanc.com>, <cheapmontblancfuller.com>, <discountmontblanc.com>, <gooddealmontblanc.com>, <lovemontblancpens.com>, <montblancitems.com>, <montblancmerchant.com>, <montblancpenshoponline.com>, <montblancpensmart.com>, <takemontblancpen.com> to Plaintiff.[2] (Compl. Prayer For Relief ¶¶ 1-3.)

### A. Jurisdiction and Venue

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default

---

[1] *See Corsair Memory, Inc. v. Corsair7.com*, 2008 U.S. Dist. LEXIS 110067 at *20 (N.D. Cal. Nov. 3, 2008) (quoting 15 U.S.C. § 1125(d)(1)(B)(i)(VI) to define cybersquatting as: "Offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct."); *see also Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 295 (2d Cir. 2002) (explaining Congress's enactment of the ACPA as a supplement to the federal trademark statute in order to combat bad-faith registration or use of domain names).

[2] In the Complaint, Plaintiff requests an order transferring registration of Defendant Domain Names, an award of attorneys' fees, and such other relief as the Court may deem just and proper. (Compl. Prayer For Relief ¶¶ 1-3.) However, in the Motion for Default Judgment, Plaintiff requests only an order transferring the Defendant Domain Names to the exclusive ownership and control of Montblanc. (Mot. Def. J.; Mem. Supp. Def. J. at 7.)

judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338 because this case arises under the federal Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.* (Compl. ¶ 8.)

This Court also has *in rem* jurisdiction over the Defendants under 15 U.S.C. § 1125(d)(2)(A) because the registrar wherein the Domain Names are registered, Verisign, is located within this district in Reston, Virginia. (Compl. ¶¶ 9-10, 26-35.) Similarly, venue is appropriate in this District under 28 U.S.C. § 1391(a), as well as 15 U.S.C. § 1125(d)(2)(C)(i), which states that "a domain name shall be deemed to have its situs in the judicial district in which . . . the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located." (*See* Compl. ¶ 12.)

### B. Service of Process

The ACPA allows a trademark owner to file an *in rem* civil action against a domain name and provides instructions on how to provide sufficient notice of such an action. Specifically, the ACPA provides that service of process in an *in rem* action may be accomplished by sending notice of the alleged violation and intent to proceed under the ACPA to the registrant of the domain name at the postal and e-mail addresses provided by the registrant to the registrar, and by publishing notice of the action as the court may direct promptly after filing the action. 15 U.S.C. § 1125(d)(2)(A) and (B).

The undersigned finds that Plaintiff has complied with all the notice requirements necessary to bring an *in rem* action against Defendant Domain Names under the ACPA. Plaintiff determined that all Defendant Domain Names are registered with the same domain registrar.

Plaintiff also determined that each of the registrants of Defendant Domain Names have the same registrant name and contact information, a fabricated mailing address in China, the same email address listed in the WHOIS database of the Registrar, and the same contact email address listed on both the homepage and the "contact us" page of each website. (Decl. of Elan Raffel ¶ 4.)

On July 8, 2013, Plaintiff emailed a notice letter alleging violations of Plaintiff's trademark rights and Plaintiff's intent to proceed under ACPA to the Registrant at the administrative email address identified in the WHOIS database and the email address identified on the homepage and the "contact us" page of Defendants' websites. (Decl. of Elan Raffel ¶ 5; Compl. ¶ 25.) On July 9, 2013, Plaintiff mailed a hard copy of the notice letter by FedEx International Economy Service ("FedEx") to the Registrant to the mailing address identified in the WHOIS database. (Decl. of Elan Raffel ¶ 11.) Shortly thereafter, FedEx informed Plaintiff that the mailing address listed in the WHOIS directory for all ten Defendant Domain Names was incorrect, and the letters could not be delivered. (Decl. of Elan Raffel ¶¶ 13-14.) Finally, on July 25, 2013, Plaintiff emailed a second notice letter alleging violations of Plaintiff's trademark rights and Plaintiff's intent to proceed under ACPA to the Registrant at the administrative email address identified in the WHOIS database and the email address identified on the homepage and the "contact us" page of Defendants' websites. (Decl. of Elan Raffel ¶ 8.) Plaintiff never received any response or other acknowledgment to the first or second notice letter. (Decl. of Elan Raffel ¶ 15.)

On August 21, 2013, Plaintiff filed a motion for service by publication. (Dkt. No. 3.) This Court granted Plaintiff's motion in part and denied it in part. (Dkt. No. 7.) Pursuant to the Court's August 23, 2013 Order, Plaintiff published notice of this action in *The Washington Times*

on August 28, 2013. (Dkt. Nos. 7-8.) As set forth in the notice of action, any person claiming an interest in the Infringing Domain Names was required to file an answer or other response to the Complaint within twenty-one days from the date of the publication of the Order in *The Washington Times*. (Dkt. No. 8.) Defendant Domain Names did not file an answer or other response to the Complaint in response to the publication of the Order. For the reasons stated above, the undersigned finds that service of process has been accomplished in this action.

### C. Grounds for Default

Plaintiff filed the Complaint on August 16, 2013. A representative for Defendants has failed to appear, answer, or file any responsive pleading in this matter. On September 20, 2013, Plaintiff filed a Request for Entry of Default against the Domain Names with the Clerk's Office. (Dkt. No. 10.) The Clerk entered default against the Domain Names on September 24, 2013. (Dkt. No. 12.) On October 3, 2013, Plaintiff filed a Motion for Entry of Default Judgment, and the Court held a hearing on the matter on October 11, 2013. (Dkt. Nos. 13-16.) When a representative for Defendants failed to appear at the hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

## II. FINDINGS OF FACT

Upon a full review of the pleadings,[3] the undersigned Magistrate Judge finds that Plaintiff has established the following facts.

### A. Plaintiff's Mark

Plaintiff is a German corporation with its principal place of business in Hamburg, Germany. (Compl. ¶ 1.) For over 100 years, Plaintiff has manufactured and sold high-quality

---

[3] The pleadings include the Complaint (Dkt. No. 1), Plaintiff's Motion for Entry of Default Judgment (Dkt.

5

writing instruments under the MONTBLANC® brand. (Mem. Supp. Mot. Def. J. at 2.) In addition to writing instruments, Plaintiff also creates and sells writing accessories, jewelry, eyewear, watches, and luxury leather goods under the MONTBLANC® brand. (Compl. ¶10.) Plaintiff has spent significant money and resources promoting and advertising the MONTBLANC® brand and trademark ever since its establishment in 1906. (Mem. Supp. Mot. Def. J. at 2.) This includes, but is not limited to, Plaintiff's use of the MONTBLANC® mark in its domain name and throughout its website. (*Id.*) Additionally, Plaintiff creates and sells products and packaging that bear the MONTBLANC® brand. (Compl. ¶14.) Plaintiff's brand has become a symbol of high quality and sophistication in the eyes of the public due to Plaintiff's successful advertising and the resulting publicity that it has generated for the brand. (*Id.*; Mem. Supp. Mot. Def. J. at 2.)

Pursuant to 15 U.S.C. § 150, Plaintiff has registered several design and word marks with the United States Patent and Trademark Office. These include, among others: (1) the word MONTBLANC® in classes 14 and 18 on March 21, 1995; (2) the word MONTBLANC® in class 3 on November 10, 1998; (3) the word MONTBLANC® in class 25 on December 26, 2000; (4) the composite MONTBLANC® and "Star Design" mark in class 16 on December 4, 2001; (5) the word mark MONTBLANC® in classes 37 and 42 on March 9, 2004. Lastly, on February 21, 2006, Plaintiff registered the composite MONTBLANC® and "Star Design" mark Registration No. 3,059,776 in classes 6, 8, 9, 21, 25, and 34. (Compl. ¶13.; Mem. Supp. Mot. Def. J. at 2.)

      **B.**  **Defendants' Infringing Domain Names**

---

No. 13), and Plaintiff's Memorandum in Support of Motion for Default Judgment (Dkt. No. 14).

Defendants' infringing domain names: <achatstylomontblanc.com>, <cheapmontblancfuller.com>, <discountmontblanc.com>, <gooddealmontblanc.com>, <lovemontblancpens.com>, <montblancitems.com>, <montblancmerchant.com>, <montblancpenshoponline.com>, <montblancpensmart.com>, <takemontblancpen.com> are maintained by VeriSign, which is located in this judicial district. (Compl. ¶ 2.) Defendant Domain Names all contain the MONTBLANC® mark in a way that is misleading to consumers. (Compl. ¶ 18.; Mem. Supp. Mot. Def. J. at 3.) Moreover, Defendant Domain Names use of the mark is very similar to Plaintiff's legitimate use of the mark on its official website. (Compl. ¶ 18.; Mem. Supp. Mot. Def. J. at 3.) Defendant Domain Names do not direct consumers to a website owned by the Registrant that is making, or has made, a bona fide offering of goods or services. (*See* Compl. ¶ 18.) Instead, the Defendant Domain Names direct consumers seeking to purchase Plaintiff's authentic merchandise to websites selling counterfeit products bearing the MONTBLANC® mark. (*Id.*) Despite the fact that all 10 Defendant Domain Names incorporate the MONTBLANC® mark and claim to sell Plaintiff's merchandise, none are affiliated with or are endorsed by Plaintiff. (Compl. ¶ 20.; Mem. Supp. Mot. Def. J. at 3.)

Plaintiff believes that Defendant Domain Names are owned and operated by an unknown entity that manufactures, distributes, and advertises fake MONTBLANC® products to online consumers. (Compl. ¶ 23.) WHOIS lists the same Registrant, address, and email contact for all ten Defendant Domain Names. (Compl. Ex. 1.) Plaintiff believes that the Registrant provided false and/or incomplete contact information to the Registrar at the time when it registered Defendant Domain Names. (Mem. Supp. Mot. Def. J. at 3.) Based on the fact that all ten Defendant Domain Names share identical Registrant information and all attempt to sell counterfeit merchandise bearing

the MONTBLANC® mark, Plaintiff believes that Defendant Domain Names and the entities behind them are engaged in an online counterfeiting scheme. (Compl. ¶ 24.)

Beginning in July, 2013, Plaintiff began attempts to contact the Registrant through e-mail and certified mail. (Decl. of Elan Raffel ¶¶ 5, 11, 13-15) The mail was returned by FedEx because the mailing address listed in the WHOIS directory for all ten Defendant Domain Names was incorrect, and consequently the letters could not be delivered. (Decl. of Elan Raffel ¶¶ 13-14.) Additionally, the Registrant has never replied to Plaintiff's e-mails. (Decl. of Elan Raffel ¶ 15.) The true identity of the Registrant and the correct address at which to serve the Registrant has never been disclosed to Plaintiff. (Compl. ¶ 22.) Finally, pursuant to the Court's August 23, 2013 Order, Plaintiff published notice of this action in *The Washington Times* on August 28, 2013. (Dkt. Nos. 7-8.) Plaintiff never received any responses.

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." A defendant in default concedes the factual allegations of the complaint. *See, e.g., Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has the effect of admitting factual allegations in the complaint). Default does not, however, constitute an admission of the adversary's conclusions of law, and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the

well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

### ACPA

Plaintiff contends that it is entitled to relief under the ACPA. The Act provides that a person is liable to the owner of a mark where the person has a "bad faith intent to profit from that mark . . . and uses a domain name that . . . is distinctive at the time of registration of the domain name . . . [and is] confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A)(i)-(ii). To establish an ACPA violation, Plaintiff is required to "(1) prove that [Defendant] had a bad faith intent to profit from using the [Defendant Domain Names], and (2) that the ... domain name[s] [are] identical or confusingly similar to, or dilutive of, the distinctive and famous [MONTBLANC] Mark." *People for the Ethical Treatment of Animals ("PETA") v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001) (citing 15 U.S.C. § 1125(d)(1)(A)). The inquiry under the ACPA is "narrower than the traditional multifactor likelihood of confusion test for trademark infringement." *Newport News Holding Corp. v. Virtual City Vision*, 650 F.3d 423, 437 (4th Cir.

2011) (citing *Coco-Cola Co. v. Purdy*, 382 F.3d 774, 783 (8th Cir. 2004)). The ACPA provides that a court may order the cancellation of the domain name or its transfer to the owner of the mark as remedy to the owner. *Id.* at §1125(d)(1)(C).

In this case, the Registrant had a bad faith intent to profit from using Defendant Domain Names. Defendant Domain Names all contain the MONTBLANC® word mark in a way that is confusingly similar to Plaintiff's legitimate use of the word mark on its official website, http://www.Montblanc.com. (Compl. ¶ 11.) Specifically, the Defendant Domain Names use the complete MONTBLANC® mark along with other generic words, such as "pen(s)," "discount," "items," "merchant," "cheap," "online," and "fuller." (Compl. ¶ 18.) These domain names direct consumers to infringing websites that display Plaintiff's MONTBLANC® mark. (*See id.*) The websites aim to confuse consumers who are seeking to purchase Plaintiff's authentic merchandise into buying counterfeit products bearing the MONTBLANC® mark. (*See id.*) Therefore, Defendant Domain Names seek to profit by attempting to convince consumers that they are purchasing legitimate, genuine Montblanc products when they are actually purchasing counterfeit goods. Finally, Plaintiff supplied incorrect contact information with an undeliverable mailing address (Decl. of Elan Raffel ¶¶ 13-14.) For these reasons, this Court finds that the Registrant has acted in bad faith in operation of Defendant Domain Names in violation of § 1125(d).

### IV.     RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge recommends the entry of default judgment in favor of Montblanc-Simplo Gmbh against Defendant Domain Names for

violation of title 15 U.S.C. § 1125(d). The undersigned Magistrate Judge further recommends that an Order be entered directing VeriSign, Inc. to immediately and permanently transfer to Montblanc-Simplo Gmbh all proprietary and ownership rights to the names <achatstylomontblanc.com>, <cheapmontblancfuller.com>, <discountmontblanc.com>, <gooddealmontblanc.com>, <lovemontblancpens.com>, <montblancitems.com>, <montblancmerchant.com>, <montblancpenshoponline.com>, <montblancpensmart.com>, <takemontblancpen.com>.

## V. NOTICE

By mailing copies of this Report and Recommendation, the parties are notified as follows. Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and the Registrant at the following e-mail address lilei188188@163.com.

/s/
Ivan D. Davis
United States Magistrate Judge

December 16, 2013
Alexandria, Virginia